Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Jiamin Chen (*pro hac vice* to be submitted)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
swilliams@saverilawfirm.com
jchen@saverilawfirm.com

*Counsel for AnywhereCommerce, Inc.*

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 4361423 CANADA INC. d/b/a ANYWHERECOMMERCE, | Case No. |
| Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | |
| SQUARE, INC., | JURY TRIAL DEMANDED |
| Defendant. | |

Plaintiff 4361423 Canada Inc. d/b/a AnywhereCommerce ("AnywhereCommerce"), for its Complaint for Patent Infringement and Demand for Jury Trial against Defendant Square, Inc. ("Square" or "Defendant"), states and alleges as follows:

## INTRODUCTION

1.       This is a patent infringement case filed to address the willful infringement by Square, Inc. of several patents covering groundbreaking technology allowing the use of mobile phones to accept credit card payments.  Square has knowingly infringed these patents for years— despite previously acknowledging the priority of these patents in various filings before the United States Patent Office—and continues to willfully infringe these patents today.

2.       The origins of the patents predate Square itself.  On February 10, 2009, a group of inventors, including a Hong Kong national named Ben Lo (Chi Wha Lo on the patent), filed the first of several patent applications on their invention providing for the use of a mobile phone to accept credit card payments.  One embodiment of the disclosed invention allowed for mobile phones to accept credit card payments via a card reader connected to the audio jack of a mobile phone, allowing the credit card information to be read and provided to the mobile phone, and then transmitted from the mobile phone to a transaction network so that the commercial transaction can be validated and completed.

3.       The patent applications filed by Mr. Lo and his colleagues were granted, and two patents were initially issued by the United States Patent & Trademark Office.  On October 9, 2012, the U.S. Patent Office issued U.S. Patent No. 8,281,998 ("the '998 patent") and on October 16, 2012, the U.S. Patent Office issued U.S. Patent No. 8,286,875 ("the '875 patent").  Ultimately, Mr. Lo and the other inventors were granted a total of nine U.S. patents, with the possibility of more patents to issue, as additional patent applications are currently pending.  The patents are owned by the plaintiff in this case, 4361423 Canada Inc., a Quebec corporation actively engaged in the business of providing payment technology solutions under the business name AnywhereCommerce.

4.       During the same time that AnywhereCommerce sought to protect its technology through the patent process, Square would take a much different approach.  Square simply took that

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

same technology for itself, becoming one of the largest and most famous companies in the world by falsely holding itself out as the originator of technology allowing the use of mobile phones to accept credit card payments.

5.      That is reflected in Square's initial public offering (the "Square IPO") and subsequent stock rise. From the date of the Square IPO (November 15, 2015), Square was off to the races, so to speak, and its share price reflects same: opening at $9.00 and growing as high as $99.00 (September 2018), with the price currently at approximately $72.00, giving Square a current market capitalization of $31.48 billion.

6.      In the hope that Square, given all of its market share and business success, might find it appropriate to compensate AnywhereCommerce for the use of AnywhereCommerce's technology on which Square's business was largely built, AnywhereCommerce approached Square in January 2019 with its patent infringement claims and attempted to engage Square in a negotiation regarding the AnywhereCommerce patents.

7.      The parties held discussions from January to April 2019.  During this time, Square represented to AnywhereCommerce that it was conducting due diligence and assured AnywhereCommerce that Square intended to negotiate a financial resolution to the patent dispute in good faith.  AnywhereCommerce soon learned that this was not the case.

8.      In April 2019, Square revealed what it had actually been doing during this period of time: that it had pretended to negotiate.  Rather than a settlement proposal, Square presented AnywhereCommerce's counsel with several draft legal actions it threatened to initiate against AnywhereCommerce—actions obviously designed with the intention of making AnywhereCommerce think better of daring to enforce its patent rights against a company the size of Square.  These threatened legal actions included not only proceedings against Anywhere Commerce, but proceedings against inventor Ben Lo's company, BBPOS, a completely separate company from AnywhereCommerce.

9.      In addition, representatives from Square explained in a rehearsed speech that it was "Jack's position" that he (Jack Dorsey) believed himself to be one of protectors of the "Silicon

Valley Ecosystem" and that Square would not overpay to a *"patent troll"*[1] because it could upset the delicate balance in the Ecosystem.  This is obviously a preposterous statement but sheds a glimpse into Square's actual core mission regarding intellectual property and its treatment of intellectual property rights owned by those outside of the Ecosystem.

10.     Square's threat tactics are exemplary of the same type of "win at all costs" business mentality with which Square has otherwise approached AnywhereCommerce's patent rights.   Square has made itself into one of the wealthiest companies in the world, in part, by willfully infringing AnywhereCommerce's patents and by wrongfully appropriating technology that it did not invent first.

11.     Provided with a reasonable opportunity to negotiate in good faith with AnywhereCommerce, Square opted instead to use its significant market power and money to attempt to bully a small Canadian company and a hard-working Hong Kong inventor (and his company), rather than recognize their innovations and fairly account for Square's appropriation of their technology.

12.     In light of Square's self-appointed status as guardian of the "Silicon Valley Ecosystem" for intellectual property matters, it is ironic that Square has chosen to use its significant market power, money and reputation to attempt to bully/destroy a small Canadian company and a valid/hard working Hong Kong inventor (and his company), rather than to welcome them into Mr. Dorsey's Ecosystem and support in their innovation.

13.     Nevertheless and in light of the above, AnywhereCommerce has elected to enforce its patent rights according to the law, as set forth at length below.

## NATURE OF THIS ACTION

14.     This is an action for patent infringement of United States Patent Nos. 8,286,875; 8,281,998; 9,016,566; 9,269,084; 9,311,637; 9,443,239; 9,613,351; and 9,818,107 – each entitled "Apparatus and Method for Commercial Transactions Using a Communication Device" –

---

[1] Square is well aware the AnywhereCommerce is anything but a "patent troll" and is actually a going concern business that has been selling the patented devices for many years.

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

(collectively, the "Asserted Patents") under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.,* and seeking damages, injunctive relief, and other relief as appropriate under 35 U.S.C. § 281, *et seq.* True and correct copies of the Asserted Patents are attached hereto as Exhibits A-H.

## THE PARTIES

15.     Plaintiff 4361423 Canada Inc. is a Quebec corporation with a principal place of business at 418-376 Victoria Ave, Montreal, QC, H3Z 1C3, Canada.  4361423 Canada Inc. is engaged in the business of providing payment technology solutions under the name AnywhereCommerce, and the Plaintiff will be referred to throughout this Complaint as AnywhereCommerce.  AnywhereCommerce has its principal U.S. office at 1100 W. Shaw Avenue, Suite 122, Fresno, CA 93711.

16.     Defendant Square, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 1455 Market Street, Suite 600, San Francisco, CA 94103.

## JURISDICTION AND VENUE

17.     This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

18.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action concerns the infringement of United States patents.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Defendant Square resides in this judicial district, has a regular and established place of business in this judicial district, and has committed acts of patent infringement in this judicial district.

20.     This Court has personal jurisdiction over Square for at least the reasons that Square resides in the district, transacts business in the district, has purposefully availed itself of the privileges of doing business in the district, and has committed acts of patent infringement in the district as alleged in this Complaint for patent infringement.

21.     Square has sold and offered for sale products that infringe each of the Asserted Patents in this judicial district, including at least the products set forth in this Complaint, including

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

transaction card readers for use with a mobile communication device, and related services, systems, methods and devices.  Square has sold and offered for sale, without limitation, the infringing Square transaction card readers and related services, systems, methods and devices in this judicial district and elsewhere.  Upon information and belief, Square has also imported the infringing Square transaction card readers into the United States and directed such importation from this district.  Additionally, Square has provided Point of Sale software and transaction servers in the United States for facilitating infringement, instructed its users to connect its products to a mobile communication device such as a cell phone or tablet, and directed use of the Square Point of Sale app on a mobile communication device – all in furtherance of Square's infringement of the Asserted Patents and, upon information and belief, all within or directed from this district.

## THE PATENTED TECHNOLOGIES

22.     AnywhereCommerce was founded in 2006 by pioneers of mobile payment technologies.  Committed to innovation, AnywhereCommerce has developed a complete range of payment card readers, mobile apps, gateway connectivity, developer tools, and customized services. With its deep industry knowledge, AnywhereCommerce has built a platform of products and services that enables clients and partners to quickly extend payment acceptance for large and small businesses everywhere. AnywhereCommerce has offices throughout North and South America, and has sold over 11 million card readers in 15 countries.

23.     With its groundbreaking developments, AnywhereCommerce developed one of the strongest patent portfolios in the industry. As pioneers in the industry, its inventors were the first to invent and patent a comprehensive mobile point-of-sale payment solution utilizing handheld devices and mobile communications.

24.     The Asserted Patents – each entitled "Apparatus and Method for Commercial Transactions Using a Communication Device" – were duly issued by the United States Patent and Trademark Office to date as follows:

- U.S. Patent No. 8,286,875 issued on October 16, 2012;

- U.S. Patent No. 8,281,998 issued on October 9, 2012;

- U.S. Patent No. 9,016,566 issued on April 28, 2015;

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

- U.S. Patent No. 9,269,084 issued on February 23, 2016;

- U.S. Patent No. 9,311,637 issued on April 12, 2016;

- U.S. Patent No. 9,443,239 issued on September 13, 2016;

- U.S. Patent No. 9,613,351 issued on April 4, 2017; and

- U.S. Patent No. 9,818,107 issued on November 14, 2017.

Additional patents are expected to issue claiming priority to AnywhereCommerce's original patent applications.

25.     AnywhereCommerce is and has been at all relevant times the owner by assignment of the Asserted Patents.

26.     In general, the inventions of the Asserted Patents are applicable to a payment transaction device such as a credit/debit card reader for use with a mobile communication device, such as a cell phone or tablet, for the purpose of effecting commercial transactions.  The robust and growing list of mobile point-of-sale patents is relevant to most mobile point-of-sale solutions in the market. The AnywhereCommerce patents cover a full range of existing and future-anticipated devices and apply across a broad range of applications, technologies and features including, but not limited to: audio jack, Bluetooth, EMV, smart cards, optical scanners, barcode readers, etc., and user interfaces such as touch screen, fingerprint, proximity detectors, cameras, etc.

**SQUARE'S KNOWLEDGE OF THE ASSERTED PATENTS**

27.     In January, 2019, AnywhereCommerce gave specific notice to Square of Square's infringement of each of the Asserted Patents.  Upon information and belief, however, Square has long understood the applicability of the Asserted Patents to the Square products – particularly the Accused Products.

28.     Square became aware of the '998 Patent shortly after it issued.  The '998 Patent is the first issued patent in the AnywhereCommerce family of Asserted Patents.  Each of the Asserted Patents is a continuation of the parent patent application.

29.     As early as December, 2013, Square analyzed and discussed the '998 patent (which it referred to under the inventor name "Tang") in a petition to invalidate U.S. Patent No.

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

8,584,946 to Robert E. Morley, Jr. ("Morley").  There, Square readily acknowledged that Tang, along with the other '998 Patent inventors, broke new ground with their invention of a card reader that connects to a mobile phone through the phone's headphone jack to communicate information read from the card to the mobile phone through the audio jack:

> Tang (Exh. 1006) is based on the Tang Provisional (Exh. 1007), which provides support for each of the features for which Tang is applied to teach in the grounds presented in [the following sections].

> Like the alleged invention of the '946 patent, Tang describes a magnetic card reader that operates in conjunction with a mobile phone to allow merchants to accept and process payments via the mobile phone. Moreover, Tang's card reader connects to the mobile phone via a headphone jack of the mobile device ....

> Tang receives analog signals from a magnetic card reader and conditions these signals as audio input for a microphone input of a mobile phone.... Thus, Tang describes the "read head" recited in claims 1, 7, 10, and 12, as well as providing an analog signal obtained from the magnetic stripe of a card swiped along the read head to a microphone input of a mobile phone.... Tang further describes using the mobile phone and the conditioned analog signals to request and receive authorization for card-based transactions....

Ex. I (IPR2014-00312, Petition for *Inter Partes* Review) at 5, 40-41; Ex. J (IPR2014-00312, Corrected Petition for *Inter Partes* Review) at 5, 40-41 (citing Exh. 1006 ('998 Tang patent) at 7:19-39; Exh. 1007 (Tang Provisional application) at Section 300; Exh. 1007 (Tang Provisional) at Figs. 3, 6, 7).

30.     The '998 Patent and related applications also have been cited as prior art to Square's own later patent applications, including but not limited to U.S. Patent No. 9,824,350 to Square co-founder Jack Dorsey.

31.     AnywhereCommerce has offered to license the Asserted Patents to Square. Notwithstanding its knowledge of the patents and their applicability to Square products, however, Square has declined to take a license and does not have a license to the Asserted Patents.  Square continues to make, sell, and offer the infringing devices and related services and systems for sale in the United States, and to import the infringing devices into the United States for sale within the United States.

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

1

**DEFENDANT'S INFRINGING ACTIVITIES**

2      32.     Square has built and continues to build its business manufacturing, selling, and

3   offering for sale infringing payment transaction devices, services and systems in the United States.

4   Square has manufactured, used, sold and/or offered for sale in the United States products that

5   directly and indirectly infringe the Asserted Patents, including, at least, the Square Magstripe

6   Reader, Square EMV Chip Card Reader, and Square Contactless and Chip Reader together with

7   Square Point of Sale applications and Square servers (collectively, the "Accused Products").  To

8   the extent that Square does not make the Accused Products in the United States, it imports

9   infringing products, and imports products intended to be used in a manner to infringe the Asserted

10  Patents.  Upon information and belief, Square has imported the products into the United States

11  from one or more foreign countries, including China.

12     33.     The Accused Products include transaction card readers as described and claimed

13  in the Asserted Patents.  Depictions of these devices have appeared on Square's website as follows:

14

15

16

17

      

18  Square Magnetic Stripe          Square EMV Chip Card          Square Contactless and
    Reader                          Reader                        Chip Reader

19

20     34.     Each Square Reader is made, used, and sold for the purpose of effecting

21  commercial transactions between an input device and a remote transaction server using a

22  transaction card, as claimed in the Asserted Patents.  These devices have practiced the apparatus

23  and method claims for commercial payment transactions using a transaction card via a mobile

24  communication device as claimed by the Asserted Patents, and as will be explained in more detail

25  below in reference to each patent.

26

27

28

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

35.     As Square states and has stated on its website and product packaging, its Readers allow a user to "[a]ccept credit cards anywhere" and "allow everyone to take payments on their



smartphone or tablet," whether by plugging the Accused Device into a phone's hands-free headset jack, as with the Magstripe Reader and EMV Reader, or by connecting wirelessly as with the Contactless & Chip Reader.



COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

*See, e.g.,* https://squareup.com/us/en/hardware/reader;
https://squareup.com/us/en/hardware/contactless-chip-reader[2] ("Square Reader lets you accept chip cards, Apple Pay, and Google Pay anywhere[]"); *see also* Ex. K (promoting use of the product to "[a]ccept credit cards on your iPhone,® iPad,® or Android™" and instructing the user to "[p]lug Square Reader into the headset jack on your device") ; Ex. M (promoting the Square EMV Chip Card Reader to "[p]rocess Visa, MasterCard, Discover, and American Express").

36.     Square provides a downloadable application known as "Point of Sale" (formerly "Square Register") to support a full spectrum of services associated with the transaction. *See, e.g.*, https://squareup.com/us/en/hardware/reader ("Square Reader works with the free Square Point of Sale app to allow everyone to take payments on their smartphone or tablet."); https://squareup.com/us/en/hardware/contactless-chip-reader ("Fire up a Square point-of-sale app and you're ready to take payments anywhere."); https://play.google.com/store/apps/details?id=com.squareup&hl=en_US ("Square Point of Sale (formerly "Square Register") is the free Android point-of-sale app that gives you everything you need to take payments and run your business.  Accept debit and credit cards with Square Reader for magstripe, and accept EMV chip cards and Android Pay with Square Reader for contactless and chip"; "Download Square Point of Sale free and seamlessly take payments with Square Reader, the cube-shaped card reader you can use anywhere."); https://squareup.com  ("Square Point of Sale is the free app that helps you do it all"); https://squareup.com/us/en/software/point-of-sale (describing Square Point of Sale capabilities).  In fact, the Readers "only work[] with the Square [Point of Sale] application and a compatible mobile device" together with Square's servers. *See* Ex. L at 1, 2 ("The Reader only works with the Square [Point of Sale] application and a compatible mobile device" and "The Square Reader is cryptographically authenticated to both the [Point of Sale] application and Square back-end servers.").

37.     With all of the Square Readers, security is important.  Accordingly, the information captured by the reader is encrypted "at the moment of swipe," and only an encrypted

---

[2] Unless otherwise stated, all websites cited herein were visited on July 25, 2019.

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

signal is sent to the user's mobile communication device and – ultimately – on to Square's transaction servers.  *See, e.g.*, https://squareup.com/help/us/en/article/3797-secure-data-encryption ("To protect Square account holders and their customers, all information entered by our customers has been encrypted and submitted to our servers securely" and "Square Point of Sale uses the Square Reader to encrypt all card-present transactions at the point of swipe, so information remains encrypted throughout transmission from the reader, to the application, to Square's data centers.").

38.     There are differences between the different Square Readers.  In general, the different Square Readers operate as follows:

The Square Magstripe Reader

39.     The Square Magstripe Reader is a payment transaction device designed to plug into the hands-free headset jack of a mobile communication device, such as a cell phone or tablet, for use in effecting a commercial transaction.  The "read head" within the reader captures information from the card's magnetic stripe as the card is swiped through a slot in the device.  The reader converts the captured information into an encrypted signal that indicates the captured card information in a format suitable for transmission to the headset jack of the cell phone or tablet (or other mobile communication device) and transmits the signal to the communication device through a communication link established by the reader's output jack to the phone/tablet's audio jack.

  

40.     The Square Magstripe Reader (like all of the Square readers) is designed to operate only with the Square servers and Square Point of Sale application, which is downloaded onto a user's phone/tablet.  After the phone/tablet receives the formatted signal from the reader to indicate the captured card information, the Square Point of Sale application on the phone/tablet

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

1   transmits the captured card information to Square's remote transaction servers for processing and

2   validation of the transaction.  The Square transaction server in turn validates the transaction and

3   returns information to the phone through the Square Point of Sale application.

4          The Square EMV Chip Card Reader

5          41.     The Square EMV Chip Card Reader is designed to read magnetic stripe cards

6   using the same apparatus as in the Magstripe Reader, and also to read "smart" cards, also known

7   as EMV or "chip" cards, which are transaction cards containing the card information on an

8   embedded integrated circuit, also known as a "chip."  The EMV Chip Card Reader therefore

9   includes the same type of apparatus and functionality as the Magstripe Reader.  *Additionally*, the

10  EMV Chip Card Reader contains structure for reading an EMV chip card.  This additional structure

11  includes (1) a second insert slot, this one designed for insertion of the EMV card, and (2) a

12  corresponding smart card reader assembly.  *See also, e.g.*, Ex. M ("Square Chip Card Reader")

13  ("The Square chip card reader has two slots, so you can accept secure EMV chip cards – and

14  magnetic stripe cards, too.")




15
16
17
18

19         42.     With its magnetic stripe apparatus, the EMV Chip Card Reader operates like the

20  Magstripe Reader to effect commercial transactions using a magnetic stripe card.

21  With its EMV Chip Card apparatus, the reader reads the information on

22  the card's chip, produces a signal indicative of the information on the

23  chip, and converts the signal to a format suitable for transmission to a

24  jack of a mobile communication device such as a cell phone or tablet.

25  It then sends the converted signal to the user's cell phone or tablet (or

26  other mobile communication device) through the device's output jack,



27
28

COMPLAINT FOR PATENT INFRINGEMENT
                                      JURY TRIAL DEMANDED

1  which is coupled to the hands-free jack of the mobile communication device for the transmission

2  of signals between the devices.

3      43.      Using a Square Point of Sale application (formerly Square Register), the cell

4  phone or tablet automatically transmits the appropriate signal/captured information to a remote

5  Square transaction server for further processing and receives transaction validation information

6  from the remote server, just as with the Magstripe Reader.  *See* Ex. L ("The Reader only works

7  with the Square [Point of Sale] application and a compatible mobile device.").

8      The Square Contactless and Chip Reader

9      44.      Square's Contactless and Chip Reader – a wireless Bluetooth device – is its

10  newest design.



17      45.      Like the EMV Chip Card Reader, the Square Contactless and Chip Reader is

18  designed as a reader for a smart card with an embedded integrated circuit chip.  *See*

19  https://squareup.com/us/en/hardware/contactless-chip-reader ("Square Reader lets you accept chip

20  cards …").

21      46.      The contactless reader connects wirelessly to a mobile communication device

22  such as a cell phone or tablet, reads the information embedded on the chip, converts the information

23  into a signal that reflects that information, and transmits the

24  information to the mobile communication device.  *See*

25  https://squareup.com/us/en/hardware/contactless-chip-reader

26  ("Connect the reader wirelessly to your Apple or Android device via

27  Bluetooth LE (no need for a headset jack).  Fire up a Square point-of-

28  sale app and you're ready to take payments anywhere.").  Using



COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

software from the Square Point of Sale app, the communication device transmits the signal/information to Square's transaction servers, which are located at remote, secured facilities.

47. As to its specific design, a photo of the Contactless and Chip Reader's internal layout is shown below:



48. As shown in the photo, the device includes a sensor for reading information that is recorded on the card's integrated circuit chip. Coupled to the sensor on the printed circuit board is a controller for converting the recorded information stored on the integrated circuit into a signal (indicative of the recorded information) suitable for transmission to a mobile communication device. The controller also does the encryption. The Contactless and Chip Reader also includes a communication IC for Bluetooth Connection. The communication IC provides a communication link to the communication device for the transmission of the encrypted signal using Bluetooth technology. *See* https://squareup.com/us/en/hardware/contactless-chip-reader ("Connect the reader wirelessly to your Apple or Android device via Bluetooth LE (no need for a headset jack). Fire up a Square point-of-sale app and you're ready to take payments anywhere.").

49. With this structure, the sensor reads the recorded information stored on the integrated circuit, the controller converts the recorded information read by the sensor into a signal that is indicative of the recorded information and suitably formatted for transmission to a mobile communication device, and transmits the signal to the mobile communication device using the communication link. The mobile communication device then transmits the card information/signal to a Square transaction server using a Square Point of Sale application for processing a commercial transaction.

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

**SQUARE'S INSTRUCTIONS TO ITS USERS**

50.    In addition to directly infringing the Asserted Patents, Square has indirectly infringed the Asserted Patents by instructing, directing, and/or requiring others, including its customers, purchasers, and users, to practice the claims of the Asserted Patents.

Square has provided materials both online and in the product packaging for its readers that instruct and encourage users to use the products in an infringing manner.  For example, Square instructs to use the products to "accept credit cards on your iPhone, iPad, or Android."  *See* Ex. K.  It instructs the user on how to use the readers with a cell phone or tablet – from establishing a connection between the two, swiping a magnetic stripe card, inserting a chip card into the reader, instructing the charge, and waiting for validation.    *See* Ex. K.  It further instructs the user to pair the reader product with both (1) a mobile communication device such as a cell phone or tablet, and (2) the Square Point of Sale app in order to make commercial transactions with a variety of payment devices.    *See,*        *e.g.*,        https://squareup.com/us/en/hardware/reader; https://squareup.com/us/en/hardware/contactless-chip-reader; https://play.google.com/store/apps/details?id=com.squareup&hl=en_US; https://squareup.com/us/en/software/point-of-sale.  Upon information and belief, Square has given these instructions with knowledge of the Asserted Patents and that a user following its instructions would infringe one or more of the Asserted Patents and intended to bring about their infringement.

51.    On information and belief, there is no substantial non-infringing use for the Square Products.  *See e.g.,* Ex. L ("The Reader only works with the Square [Point of Sale] application and a compatible mobile device" and "The Square Reader is cryptographically authenticated to both the [Point of Sale] application and Square back-end servers.").

**COUNT I**

**DIRECT INFRINGEMENT OF THE '875 PATENT**

52.    AnywhereCommerce restates and incorporates by reference the paragraphs above as if fully stated herein.

53.    Square has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '875 Patent in violation of 35 U.S.C. §271(a)

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

by making, using, selling, and/or offering to sell within the United States, without authority, the Square Magstripe Reader and Square EMV Chip Card Reader, together with the Square Point of Sale application and servers, which acts have been without the permission, consent, authorization or license from AnywhereCommerce.  Further, Square has directly infringed and continues to directly infringe one or more claims of the '875 Patent by importing into the United States, without authority, the Square Magstripe Reader and Square EMV Chip Card Reader.

54.     Each of the Square Magstripe Reader and Square EMV Chip Card Reader, in connection with the Square Point of Sale application and Square servers, meets every limitation of one or more claims of the '875 patent and infringes the '875 Patent because each contains every element and/or practices every step of one or more claims of the patent including, without limitation, Claim 1, which is directed to "An apparatus for effecting commercial transactions between an input device and a remote transaction server using a transaction card, said apparatus comprising: an input device for capturing information from the transaction card; a controller for converting the captured card information into a signal having an analog audio format suitable for transmission to an analog hands-free jack of a mobile communication device; and a communication link for coupling said input device to an analog hands-free jack of a mobile communication device for the transmission of said analog-audio-format signals therebetween; wherein when said input device captures the card information, said controller converts the card information into said analog-audio-format signal and transmits said converted signal via said communication link to said mobile communication device; and wherein said mobile communication device automatically transmits the captured card information to the remote transaction server and receives transaction validation information from said remote transaction server." Ex. A at 11:48-12:3.

55.     Specifically, taking a payment on either of these Square devices effects "commercial transactions" between an "input device" and a remote transaction server with the use of a transaction card such as a credit or debit card.  As Square explains on its website, the Accused Products allow "everyone to take payments on their smartphone or tablet" by providing for communication with Square's network and servers.  https://squareup.com/us/en/hardware/reader;

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

1   https://squareup.com/help/us/en/article/3797-secure-data-encryption;

2   https://squareup.com/us/en/security (discussing the transfer of data "[f]rom the time the customer

3   uses a credit card or enters their information … until it reaches Square's processing

4   environment."); *see also* Ex. L at 2 (referring to Square's back-end servers).

5        56.      To that end, the Square Magstripe Reader has an "input device for capturing

6   information from the transaction card," Ex. A at 11:51-52, as shown in the photos below:

 

12  By swiping a credit card's magnetic stripe through a slot provided on the Magstripe Reader, the

13  credit card contacts the internal "read head" assembly, which captures the card information from

14  the                  magnetic                  stripe.                  *See,                  e.g.,*

15  https://www.magtek.com/content/documentationfiles/d99800004.pdf (ISO 7811 for Magnetic

16  Stripe Card Standards) (specifies the requirements for magnetic stripe encoding);

17  https://www.wired.com/2013/12/the-new-square-reader-a-look-at-how-gadget-guts-are-designed/

18  (regarding a re-designing of the Magstripe Reader, explaining that the "read head" is "the piece

19  that actually pulls the data off your credit card's magnetic stripe").

20       57.      The Square Magstripe Reader also has a custom chip, which is a controller that

21  controls the functions of the reader, including "converting the captured card information into a

22  signal having an analog audio format suitable for transmission to an analog hands-free jack of a

23  mobile communication device." *See* Ex. A at 11:53-56.  In other words, the Magstripe Reader's

24  controller converts the information it obtains from the transaction card into an analog audio

25  formatted signal for transmission to the analog hands-free jack of a cell phone or tablet.  *See, e.g.*,

26  https://www.wired.com/2013/12/the-new-square-reader-a-look-at-how-gadget-guts-are-designed/

27  (explaining that the Magstripe Reader's chip, a/k/a controller, controls the "processes at the heart

28

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

1   of the product:  Decoding the magnetic signal from the credit card, encoding the electrical signal

2   being sent to the smartphone, and all the encryption that happens in between.").

3       58.      In addition, the Square Magstripe Reader has an

4   output jack, which is designed to plug into a cell phone or tablet's

5   analog hands-free (*i.e.*, headphone) jack and serves as a

6   "communication link for coupling said input device to an analog

7   hands-free jack of a mobile communication device for the

8   transmission of said analog-audio-format signals therebetween."  *See*

9   https://squareup.com/us/en/hardware/reader.



10       59.      When the Square Magstripe Reader is put to use, the device's read head captures

11   the card information, and the controller converts the card information into an analog-audio-format

12   signal and transmits the converted signal through the communication link (between the reader's

13   output jack and an audio jack on a mobile communications device such as a cell phone or tablet)

14   to the mobile communications device.

15       60.      After the mobile communication device receives the converted signal, the

16   mobile communication device acting on instructions from the Square Point of Sale application

17   automatically transmits the captured card information to a remote Square transaction server and

18   receives transaction validation information from that server.  *See, e.g.*,

19   https://play.google.com/store/apps/details?id=com.squareup&hl=en_US.

20       61.      The Point of Sale application does this automatically for security purposes.  For

21   example, the user does not need to know/provide the url address location for the transaction server.

22   This is part of meeting the Payment Card Industry Security Standard (PCI-DSS).  Square provides

23

24

25

26

27

28

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

a summary of its encryption practices and other points of security on the Square website, including the following:

12/6/2018                                    Secure Data Encryption | Square Support Center – US

## Payment Card Industry Data Security Standard

Square complies with the Payment Card Industry Data Security Standard (PCI DSS) on your behalf so you do not need to individually validate your state of compliance. The following are items that Square has addressed on your behalf:

- Square Point of Sale does not retain payment card data on the mobile device or within the application.
- Square Point of Sale uses the Square Reader to encrypt all card-present transactions at the point of swipe, so information remains encrypted throughout transmission from the reader, to the application, to Square's data centers. All communications are secure whether connected to the Internet via wireless or cellular data network (EDGE, 3G or 4G.)
- Square Point of Sale enables you to enter payment card data. In addition, you can review transactions via the online dashboard or within the application itself. Square does not surface or display the full credit card number to the seller so there is no way to inadvertently display this data to any Square account holder.
- Square Point of Sale provides an application that is secure by default allowing customers to focus on their business. There are no configurable security controls within the application.
- Square Point of Sale does not require or permit remote connectivity to the application.
- Square Point of Sale updates are available through the Apple iTunes and Google Play stores.

https://squareup.com/help/us/en/article/3797-secure-data-encryption; *see also* https://squareup.com/guides/pci-compliance.

62.     All of this is as claimed in Claim 1 of the '875 Patent.

63.     The EMV Chip Card Reader infringes at least for the reason that it includes all of the same apparatus and functionality as the Magstripe Reader and meets all of the limitations of Claim 1 in the same way as the Magstripe Reader. With the magnetic stripe reader portion of the EMV Chip Card Reader device, a magnetic stripe transaction card is swiped through the reader's slot designed for a magnetic stripe card, the credit card contacts the internal "read head" assembly to capture the card information from the magnetic stripe, the reader's controller converts the information it obtains from the transaction card into an analog audio formatted signal for transmission to the analog hands-free jack of a cell phone or tablet, and its output jack, which is designed to plug into the audio jack of a cell phone or tablet, provides a "communication link for coupling said input device to an analog hands-free jack of a mobile communication device for the transmission of said analog-audio-format signals therebetween." The input device captures the card information, the controller converts the card information into said analog-audio-format signal and transmits the converted signal through the communication link to the mobile communication

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

device, and the mobile communication device – instructed and enabled by the Square Point of Sale application –  automatically transmits the captured card information to the Square remote transaction server and receives transaction validation information from the remote transaction server." Ex. A at 11:48-12:3*; see also* Exs. K, L, M.

64.     On information and belief, Square has practiced other independent and dependent claims of the '875 Patent in addition to Claim 1 and encouraged others to do so. AnywhereCommerce reserves the right to identify other infringing products and/or additional claims of the '875 Patent according to the local patent rules of this district.

65.     Square's infringement has caused and continues to cause AnywhereCommerce to suffer damages in an amount to be determined, and has caused and continues to cause AnywhereCommerce irreparable harm for which AnywhereCommerce has no adequate remedy at law.  Both AnywhereCommerce and Square compete in the space for mobile point-of-sale products and services, as described above.  Square's continued infringement of the Asserted Patents causes harm to AnywhereCommerce in the form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities, inadequacy of money damage, and direct and indirect competition. Monetary damages are insufficient to compensate AnywhereCommerce for these harms. Accordingly,   AnywhereCommerce   is   entitled   to   permanent   injunctive   relief. AnywhereCommerce will continue to suffer irreparable harm unless and until the Court enjoins Square from committing further infringing acts.

66.     Square's infringement of the '875 Patent has injured and continues to injure AnywhereCommerce in an amount to be proven at trial, but not less than a reasonable royalty. AnywhereCommerce is entitled to recover from Square damages, including lost profits, in an amount to be determined that is adequate to compensate AnywhereCommerce for Defendant's infringement.

67.     Upon information and belief, Square has infringed with full knowledge of the Asserted Patents including the '875 Patent since at least 2013 and despite specific, written notice in January of 2019 from AnywhereCommerce to Square of all Asserted Patents as well as specific notice of Square's infringement.  Despite its knowledge of AnywhereCommerce's patents and

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

1  specifically the Asserted Patents, Square has sold and continued to sell the Accused Products,

2  imported the Accused Products, and performed services in complete and reckless disregard of

3  AnywhereCommerce's patent rights.  As such, Square has acted recklessly and continues to

4  willfully, wantonly, and deliberately engage in acts of infringement of the '875 Patent, justifying

5  an award to AnywhereCommerce of increased damages under U.S.C. § 284, and attorneys' fees

6  and costs incurred under 35 U.S.C. § 285.

7  ## COUNT II

8  ## INDIRECT INFRINGEMENT OF THE '875 PATENT – INDUCEMENT

9      68.      AnywhereCommerce restates and incorporates by reference the paragraphs

10  above as if fully stated herein.

11      69.      Square has induced and continues to induce infringement of one or more claims

12  of the '875 Patent under 35 U.S.C. § 271(b), including at least Claim 1.  In addition to directly

13  infringing the '875 Patent, Square has indirectly infringed the patent pursuant to 35 U.S.C. § 271(b)

14  by instructing, directing and/or requiring others, including customers, purchasers, and users, to use

15  its products to form an infringing apparatus and use the apparatus in a manner that infringes the

16  '875 Patent either literally or under the doctrine of equivalents.  In that regard, Square has known

17  or been willfully blind to the fact that it was inducing others, including customers, purchasers, and

18  users, to infringe by practicing, either themselves or in conjunction with Square, one or more

19  claims of the '875 Patent.  Following Defendant's instructions, customers, purchasers, and users

20  have actually infringed by practicing, either themselves or in conjunction with Defendant, one or

21  more claims of the '875 Patent.

22      70.      Square has knowingly and actively aided and abetted the direct infringement of

23  the '875 Patent by instructing and encouraging its customers, purchasers, and users to use the '875

24  Accused Products.  Its instructions and encouragement have included, but are not limited to,

25  advising third parties to use the '875 Accused Products in an infringing manner, providing a

26  mechanism through which third parties may infringe the '875 Patent, advertising and promoting

27  the use of the '875 Accused Products in an infringing manner, and distributing guidelines and

28  instructions to third parties on how to use the '875 Accused Products in an infringing manner.

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

1

**COUNT III**

2

**INDIRECT INFRINGEMENT OF THE '875 PATENT – CONTRIBUTORY**

3

**INFRINGEMENT**

4

71.     AnywhereCommerce restates and incorporates by reference the paragraphs

5

above as if fully stated herein.

6

72.     Square has contributed to infringement and continues to contribute to

7

infringement of one or more claims of the '875 Patent under 35 U.S.C. § 271(c), including at least

8

Claim 1.  In addition to directly infringing the '875 Patent, Square has indirectly infringed the

9

patent pursuant to 35 U.S.C. § 271(c) by supplying the Square Magstripe Reader and  Square EMV

10

Chip Card Reader, as well as the Square Point of Sale application, all of which are used to directly

11

infringe the claims.

12

73.     Upon information and belief, there is no substantial non-infringing use for the

13

Square Magstripe Reader, Square EMV Chip Card Reader, or the Point of Sale application.  They

14

are specifically designed to infringe the Asserted Patent claims, and Square has intended for them

15

to do so.

16

74.     Square has made, used, offered to sell, sold, and imported these devices with

17

knowledge of the '875 Patent.

18

75.     Square further has made, used, offered to sell, sold, and imported these devices

19

with knowledge that they have no substantial non-infringing use.

20

**COUNT IV**

21

**DIRECT INFRINGEMENT OF THE '998 PATENT**

22

76.     AnywhereCommerce restates and incorporates by reference the paragraphs

23

above as if fully stated herein.

24

77.     Square has directly infringed and continues to directly infringe, literally or under

25

the doctrine of equivalents, one or more claims of the '998 Patent in violation of 35 U.S.C. §271(a)

26

by making, using, selling, and/or offering to sell within the United States, without authority, the

27

Square Magstripe Reader and Square EMV Chip Card Reader, together with the Square Point of

28

Sale application and servers, which acts have been without the permission, consent, authorization

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

or license from AnywhereCommerce.  Further, Square has directly infringed and continues to directly infringe one or more claims of the '998 Patent by importing into the United States, without authority, the Square Magstripe Reader and Square EMV Chip Card Reader.

78.     Each of the Square Magstripe Reader and Square EMV Chip Card Reader, in connection with the Square Point of Sale application and Square servers, meets every limitation of one or more claims of the '998 Patent and infringes the '998 Patent because each contains every element and/or practices every step of one or more claims of the patent including, without limitation, Claim 1.

79.     Claim 1 of the '998 Patent is the same as Claim 1 of the '875 Patent, except for the additional requirement that the analog audio signal generated by the controller be encrypted. *See* Ex. B at 11:53-56 ("a controller for converting the captured card information into an *encrypted* audio signal having an analog audio format suitable for transmission to an analog hands-free jack of a mobile communication device") (emphasis added).   As to the elements of this claim that mirror those of the '875 Patent, then, the analysis of the Square Magstripe Reader and EMV Chip Card Reader is the same as for Claim 1 of the '875 Patent, above.

80.     In addition, as to the requirement that the controller of these devices include encryption capabilities and provide for transmitting an encrypted signal, that requirement is also present.  *See, e.g.*, https://squareup.com/help/us/en/article/3797-secure-data-encryption ("Secure Data Encryption") ("Square Point of Sale uses the Square Reader to encrypt all card-present transactions at the point of swipe, so information remains encrypted throughout transmission from the reader, to the application, to Square's data centers.  All communications are secure whether connected to the Internet via wireless or cellular data network (EDGE, 3G or 4G).")   Square's Vice President of Hardware, Jesse Dorogusker, has explained that this encryption is controlled by the reader's chip, which is the device's controller and controls "the processes at the heart of the product:  Decoding the magnetic signal from the credit card, encoding the electrical signal being sent to the smartphone, and all the encryption that happens in between."  *See, e.g.*, https://www.wired.com/2013/12/the-new-square-reader-a-look-at-how-gadget-guts-are-designed/.

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

81.     On information and belief, Square has practiced other independent and dependent claims of the '998 Patent in addition to Claim 1 and encouraged others to do so. AnywhereCommerce reserves the right to identify other infringing products and/or additional claims of the '998 Patent according to the local patent rules of this district.

82.     Square's infringement has caused and continues to cause AnywhereCommerce to suffer damages in an amount to be determined, and has caused and continues to cause AnywhereCommerce irreparable harm for which AnywhereCommerce has no adequate remedy at law. Both AnywhereCommerce and Square compete in the space for mobile point of sale products and services, as described above. Further, on information and belief, Square's continued infringement of the Asserted Patents causes harm to AnywhereCommerce in the form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities, and direct and indirect competition. Monetary damages are insufficient to compensate AnywhereCommerce for these harms. Accordingly, AnywhereCommerce is entitled to permanent injunctive relief. AnywhereCommerce will continue to suffer irreparable harm unless and until the Court enjoins Square from committing further infringing acts.

83.     Square's infringement of the '998 Patent has injured and continues to injure AnywhereCommerce in an amount to be proven at trial, but not less than a reasonable royalty. AnywhereCommerce is entitled to recover from Square damages, including lost profits, in an amount to be determined that is adequate to compensate AnywhereCommerce for Defendant's infringement.

84.     Upon information and belief, Square has infringed with full knowledge of the Asserted Patents including the '998 Patent since at least 2013 and despite specific, written notice in January of 2019 from AnywhereCommerce to Square of all Asserted Patents as well as specific notice of Square's infringement. Despite its knowledge of AnywhereCommerce's patents and specifically the Asserted Patents, Square has sold and continued to sell the Accused Products, imported the Accused Products, and performed services in complete and reckless disregard of AnywhereCommerce's patent rights. As such, Square has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '998 Patent, justifying

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

1    an award to AnywhereCommerce of increased damages under U.S.C. § 284, and attorneys' fees

2    and costs incurred under 35 U.S.C. § 285.

3                                                **COUNT V**

4              **INDIRECT INFRINGEMENT OF THE '998 PATENT – INDUCEMENT**

5              85.      AnywhereCommerce restates and incorporates by reference the paragraphs

6    above as if fully stated herein.

7              86.      Square has induced and continues to induce infringement of one or more claims

8    of the '998 Patent under 35 U.S.C. § 271(b), including at least Claim 1.  In addition to directly

9    infringing the '998 Patent, Square has indirectly infringed the patent pursuant to 35 U.S.C. § 271(b)

10   by instructing, directing and/or requiring others, including customers, purchasers, and users, to use

11   its products to form an infringing apparatus and use the apparatus in a manner that infringes the

12   '998 Patent either literally or under the doctrine of equivalents.  In that regard, Square has known

13   or been willfully blind to the fact that it was inducing others, including customers, purchasers, and

14   users, to infringe by practicing, either themselves or in conjunction with Square, one or more

15   apparatus claims of the '998 Patent.  Following Defendant's instructions, customers, purchasers,

16   and users have actually infringed by practicing, either themselves or in conjunction with

17   Defendant, one or more claims of the '998 Patent.

18             87.      Square knowingly and actively aided and abetted the direct infringement of the

19   '998 Patent by instructing and encouraging its customers, purchasers, and users to use the '998

20   Accused Products.  Its instructions and encouragement have included, but are not limited to,

21   advising third parties to use the '998 Accused Products in an infringing manner, providing a

22   mechanism through which third parties may infringe the '998 Patent, advertising and promoting

23   the use of the '998 Accused Products in an infringing manner, and distributing guidelines and

24   instructions to third parties on how to use the '998 Accused Products in an infringing manner.

25

26

27

28

COMPLAINT FOR PATENT INFRINGEMENT
                                                          JURY TRIAL DEMANDED

## COUNT VI

## INDIRECT INFRINGEMENT OF THE '998 PATENT – CONTRIBUTORY INFRINGEMENT

88.     AnywhereCommerce restates and incorporates by reference the paragraphs above as if fully stated herein.

89.     Square has contributed to infringement and continues to contribute to infringement of one or more claims of the '998 Patent under 35 U.S.C. § 271(c), including at least Claim 1.  As with the '875 Patent, in addition to directly infringing the '998 Patent, Square indirectly infringes the '998 Patent pursuant to 35 U.S.C. § 271(c) by supplying the Square Magstripe Reader and  Square EMV Chip Card Reader, as well as the Square Point of Sale application, all of which are used to directly infringe the claims.

90.     Upon information and belief, there is no substantial non-infringing use for the Square Magstripe Reader, Square EMV Chip Card Reader, or the Point of Sale application.  They are specifically designed to infringe the Asserted Patent claims, and Square intends for them to do so.

91.     Square has made, used, offered to sell, sold, and imported these devices with knowledge of the '998 Patent.

92.     Square further has made, used, offered to sell, sold, and imported these devices with knowledge that they have no substantial non-infringing use.

## COUNT VII

## DIRECT INFRINGEMENT OF THE '566 PATENT

93.     AnywhereCommerce restates and incorporates by reference the paragraphs above as if fully stated herein.

94.     Square has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '566 Patent, in violation of 35 U.S.C. §271(a) by making, using, selling, and/or offering to sell within the United States, without authority, the Square EMV Chip Card Reader, together with the Square Point of Sale application and servers, which acts have been without the permission, consent, authorization or license from

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

AnywhereCommerce.  Further, Square has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '566 Patent by importing into the United States, without authority, the Square EMV Chip Card Reader.

95.     Square and its EMV Chip Card Reader, operating with the Square Point of Sale application and Square servers, meets every limitation of one or more claims of the '566 Patent and infringes the '566 Patent because it contains every element and/or practices every step of one or more claims of the patent including, without limitation, Claim 3.

96.     Claim 3 of the '566 Patent is a method claim specific to smart card readers.  As such, it claims a "method for reading a smart card having recorded information stored on an integrated circuit incorporated into the card, the method comprising the steps of:  providing a portable card reader device comprising a sensor for reading the recorded information stored on the integrated circuit, and an output jack adapted to be inserted into a jack associated with a mobile communication device; wherein said portable card reader device produces an analog signal indicative of the recorded information stored on said integrated circuit; said analog signal suitable for transmission to said jack of said mobile communication device; providing said analog signal indicative of the recorded information stored on the integrated circuit to said mobile communication device for further processing by circuitry contained in said mobile communication device; and transmitting said signal to a transaction server for further processing." Ex. C at 12:21-41.

97.     Square and others at its direction have performed the claimed method by providing the Square EMV Chip Card Reader for use, together with the Square Point of Sale application and servers, in reading a smart card having recorded information stored on an integrated circuit incorporated into the card, such as a type of credit card or debit card generally known as a "chip" card.

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

98.     Square and others at its direction have provided the Square EMV Chip Card Reader, which is a portable card reader device for a smart card and includes both (1) a sensor for reading the recorded information stored on the integrated circuit, and (2) an output jack adapted to be inserted into a jack associated with a mobile communication device, such as a cell phone or tablet.

 

99.     The Square EMV Chip Card Reader produces an analog signal (indicative of the recorded information stored on said integrated circuit) that is suitable for transmission to the jack of the mobile communication device and provides the analog signal to the mobile communication device for further processing by circuitry contained in the mobile communication device.  The operations of the reader with a mobile communication device show that an analog signal is generated and formatted for transmission to the mobile communication device, at least through the fact that the signal is received through the mobile communication device's analog jack.  *See* Exs. K, L, M.

100.    The EMV Chip Card Reader provides the analog signal to the mobile communication device for further processing by circuitry contained in the mobile communication device.   After the signal reaches the mobile communication device, upon information and belief, instructions and software from the Square Point of Sale application working on the circuitry of the mobile communication device cause the circuitry to perform additional processing on the signal.  *See, e.g.*, Ex. L (explaining that the Square readers "only work[] with the Square [Point of Sale] application and a compatible mobile device.").

With the use of its Point of Sale application, Square then transmits the signal to a transaction server for further processing.  *See, e.g.*, https://squareup.com/help/us/en/article/3797-secure-data-

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

encryption ("To protect Square account holders and their customers, all information entered by our customers has been encrypted and submitted to our servers securely" and "Square Point of Sale uses the Square Reader to encrypt all card-present transactions at the point of swipe, so information remains encrypted throughout transmission from the reader, to the application, to Square's data centers.")  This step completes the infringement of Claim 3.

101.     On information and belief, Square has practiced other independent and dependent claims of the '566 Patent in addition to Claim 3 and encouraged others to do so. AnywhereCommerce reserves the right to identify other infringing products and/or additional claims of the '566 Patent according to the local patent rules of this district.

102.     Square's infringement has caused and continues to cause AnywhereCommerce to suffer damages in an amount to be determined, and has caused and continues to cause AnywhereCommerce irreparable harm for which AnywhereCommerce has no adequate remedy at law.  Both AnywhereCommerce and Square compete in the space for mobile point-of-sale products and services, as described above.  Square's continued infringement of the Asserted Patents causes harm to AnywhereCommerce in the form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities, inadequacy of money damage, and direct and indirect competition. Monetary damages are insufficient to compensate AnywhereCommerce for these harms. Accordingly, AnywhereCommerce is entitled to permanent injunctive relief. AnywhereCommerce will continue to suffer irreparable harm unless and until the Court enjoins Square from committing further infringing acts.

103.     Square's infringement of the '566 Patent has injured and continues to injure AnywhereCommerce in an amount to be proven at trial, but not less than a reasonable royalty. AnywhereCommerce is entitled to recover from Square damages, including lost profits, in an amount to be determined that is adequate to compensate AnywhereCommerce for Defendant's infringement.

104.     Upon information and belief, Square has infringed with full knowledge of the Asserted Patents including the '566 Patent since at least shortly after its issuance in 2015 and despite specific, written notice in January of 2019 from AnywhereCommerce to Square of all

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

Asserted Patents as well as specific notice of Square's infringement.  Despite its knowledge of AnywhereCommerce's patents and specifically the Asserted Patents, Square has sold and continued to sell the Accused Products, imported the Accused Products, and performed services in complete and reckless disregard of AnywhereCommerce's patent rights.  As such, Square has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '566 Patent, justifying an award to AnywhereCommerce of increased damages under U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VIII

## INDIRECT INFRINGEMENT OF THE '566 PATENT -- INDUCEMENT

105.     AnywhereCommerce restates and incorporates by reference the paragraphs above as if fully stated herein.

106.     Square has induced and continues to induce infringement of one or more claims of the '566 Patent under 35 U.S.C. § 271(b), including at least Claim 3.  In addition to directly infringing the '566 Patent, Square has indirectly infringed the patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including customers, purchasers, and users, to use its products to form an infringing apparatus and use the apparatus in a manner that infringes the '566 Patent either literally or under the doctrine of equivalents such as by performing steps of the method claims where all of the steps of the method claims are performed by either Square or its customers, purchasers, and users, or some combination thereof.  *See, e.g.*, Exs. K, L, M.  In that regard, Square has known or been willfully blind to the fact that it was inducing others, including customers, purchasers, and users, to infringe by practicing, either themselves or in conjunction with Square, one or more claims of the '566 Patent.  Following Defendant's instructions, customers, purchasers, and users have actually infringed by practicing, either themselves or in conjunction with Defendant, one or more claims of the '566 Patent.

107.     Square has knowingly and actively aided and abetted the direct infringement of the '566 Patent by instructing and encouraging its customers, purchasers, and users to use the '566 Accused Products.  Its instructions and encouragement have included, but are not limited to, advising third parties to use the '566 Accused Products in an infringing manner, providing a

1   mechanism through which third parties may infringe the '566 Patent, advertising and promoting

2   the use of the '566 Accused Products in an infringing manner, and distributing guidelines and

3   instructions to third parties on how to use the '566 Accused Products in an infringing manner.

4                                    **COUNT IX**

5   **INDIRECT INFRINGEMENT OF THE '566 PATENT – CONTRIBUTORY**

6                                   **INFRINGEMENT**

7        108.    AnywhereCommerce restates and incorporates by reference the paragraphs

8   above as if fully stated herein.

9        109.    Square has contributed to infringement and continues to contribute to

10  infringement of one or more claims of the '566 Patent under 35 U.S.C. § 271(c), including at least

11  Claim 3.  In addition to directly infringing the '566 Patent, Square has indirectly infringed the

12  patent pursuant to 35 U.S.C. § 271(c) by supplying the Square EMV Chip Card Reader, as well as

13  the Square Point of Sale application, both of which are used to directly infringe the claims.

14       110.    Upon information and belief, there is no substantial non-infringing use for the

15  Square EMV Chip Card Reader or the Point of Sale application.  They are specifically designed to

16  infringe the Asserted Patent claims, and Square intends for them to do so.

17       111.    Square has made, used, offered to sell, sold, and imported these devices with

18  knowledge of the '566 Patent.

19       112.    Square further has made, used, offered to sell, sold, and imported these devices

20  with knowledge that they have no substantial non-infringing use.

21                                    **COUNT X**

22             **DIRECT INFRINGEMENT OF THE '084 PATENT**

23       113.    AnywhereCommerce restates and incorporates by reference the paragraphs

24  above as if fully stated herein.

25       114.    Square has directly infringed and continues to directly infringe, literally or under

26  the doctrine of equivalents, one or more claims of the '084 Patent, in violation of 35 U.S.C. §271(a)

27  by making, using, selling, and/or offering to sell within the United States, without authority, the

28  Square EMV Chip Card Reader, together with the Square Point of Sale application and servers,

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

which acts have been without the permission, consent, authorization or license from AnywhereCommerce.  Further, Square has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '084 Patent by importing into the United States, without authority, the Square EMV Chip Card Reader.

115.    The Square EMV Chip Card Reader, operating with the Square Point of Sale application and Square servers, meets every limitation of one or more claims of the patent and infringes the '084 Patent because it contains every element and/or practices every step of one or more claims of the patent including without limitation Claim 5, which is directed to a method "for reading a smart card, the method comprising the steps of:  providing a portable card reader device comprising a sensor for reading information stored on the integrated circuit of a smart card, and an output jack adapted to be inserted into a hands-free jack associated with a mobile communication device; wherein said portable card reader device produces an encrypted analog signal indicative of the information stored on said integrated circuit; said encrypted analog signal suitable for transmission to said hands-free jack of said mobile communication device; providing said encrypted analog signal indicative of the information stored on the integrated circuit to said mobile communication device for further processing by circuitry contained in said mobile communication device; and transmitting said encrypted analog signal to a transaction server for further processing."  Ex. D at 12:23-43.

116.    Square and others at its direction have performed the claimed method by providing the Square EMV Chip Card Reader, together with the Square Point of Sale application and servers, for use in reading a smart card, such as a type of credit card or debit card generally known as a "chip" card.

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

117.     Square and others at its direction have performed the steps of a method for reading a smart card by providing the Square EMV Chip Card Reader, which – as discussed above – is a portable card reader device including both (1) a sensor for reading the recorded information stored on the integrated circuit of the smart card, and (2) an output jack adapted to be inserted into a hands-free headset jack associated with a mobile communication device, such as a cell phone or tablet.

 

118.     The Square EMV Chip Card Reader produces an encrypted analog signal (indicative of the recorded information stored on said integrated circuit) that is suitable for transmission to the hands-free headset jack of the mobile communication device and provides the encrypted analog signal to the mobile communication device for further processing by circuitry contained in the mobile communication device.  The operations of the reader with a mobile communication device show that an analog signal is generated and formatted for transmission to the mobile communication device, at least through the fact that the signal is received through the mobile communication device's analog jack.  Moreover, Square documents advise that the signal is encrypted.  *See, e.g.*, https://squareup.com/help/us/en/article/3797-secure-data-encryption ("Secure Data Encryption") ("Square Point of Sale uses the Square Reader to encrypt all card-present transactions at the point of swipe, so information remains encrypted throughout transmission from the reader, to the application, to Square's data centers.  All communications are secure whether connected to the Internet via wireless or cellular data network (EDGE, 3G or 4G).").

119.     The Square EMV Chip Card Reader provides the encrypted analog signal to the mobile communication device for further processing by circuitry contained in the mobile

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

communication device.   After the signal reaches the mobile communication device, upon information and belief, instructions and software from the Square Point of Sale app working on the circuitry of the mobile communication device cause the circuitry to perform additional processing on the signal.   *See, e.g.*, Ex. L (explaining that the Square readers "only work[] with the Square [Point of Sale] application and a compatible mobile device.").

120.     With the use of its Point of Sale application, Square then transmits the encrypted analog signal to a transaction server for further processing.  This step completes the infringement of Claim 5.

121.     On information and belief, Square has practiced independent and dependent claims of the '084 Patent in addition to Claim 5 and encouraged others to do so.  AnywhereCommerce reserves the right to identify other infringing products and/or additional claims of the '084 Patent according to the local patent rules of this district.

122.     Square's infringement has caused and continues to cause AnywhereCommerce to suffer damages in an amount to be determined, and has caused and continues to cause AnywhereCommerce irreparable harm for which AnywhereCommerce has no adequate remedy at law.  Both AnywhereCommerce and Square compete in the space for mobile point-of-sale products and services, as described above.  Square's continued infringement of the Asserted Patents causes harm to AnywhereCommerce in the form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities, inadequacy of money damage, and direct and indirect competition.  Monetary damages are insufficient to compensate AnywhereCommerce for these harms.  Accordingly, AnywhereCommerce is entitled to permanent injunctive relief.  AnywhereCommerce will continue to suffer irreparable harm unless and until the Court enjoins Square from committing further infringing acts.

123.     Square's infringement of the '084 Patent has injured and continues to injure AnywhereCommerce in an amount to be proven at trial, but not less than a reasonable royalty.  AnywhereCommerce is entitled to recover from Square damages, including lost profits, in an amount to be determined that is adequate to compensate AnywhereCommerce for Defendant's infringement.

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

124.     Upon information and belief, Square has infringed with full knowledge of the Asserted Patents including the '084 Patent since at least shortly after its issuance in 2016 and despite specific, written notice in January of 2019 from AnywhereCommerce to Square of all Asserted Patents as well as specific notice of Square's infringement.  Despite its knowledge of AnywhereCommerce's patents and specifically the Asserted Patents, Square has sold and continued to sell the Accused Products, imported the Accused Products, and performed services in complete and reckless disregard of AnywhereCommerce's patent rights.  As such, Square has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '084 Patent, justifying an award to AnywhereCommerce of increased damages under U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT XI

## INDIRECT INFRINGEMENT OF THE '084 PATENT -- INDUCEMENT

125.     AnywhereCommerce restates and incorporates by reference the paragraphs above as if fully stated herein.

126.     Square has induced and continues to induce infringement of one or more claims of the '084 Patent under 35 U.S.C. § 271(b), including at least Claim 5.  In addition to directly infringing the '084 Patent, Square has indirectly infringed the patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including customers, purchasers, and users, to use its products to form an infringing apparatus and use the apparatus in a manner that infringes the '084 Patent either literally or under the doctrine of equivalents such as by performing steps of the method claims where all of the steps of the method claims are performed by either Square or its customers, purchasers, and users, or some combination thereof.  In that regard, Square has known or been willfully blind to the fact that it was inducing others, including customers, purchasers, and users, to infringe by practicing, either themselves or in conjunction with Square, one or more apparatus claims of the '084 Patent.  Following Defendant's instructions, customers, purchasers, and users have actually infringed by practicing, either themselves or in conjunction with Defendant, one or more claims of the '084 Patent.

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

127.     Square has knowingly and actively aided and abetted the direct infringement of the '084 Patent by instructing and encouraging its customers, purchasers, and users to use the '084 Accused Products.  Its instructions and encouragement have included, but are not limited to, advising third parties to use the '084 Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '084 Patent, advertising and promoting the use of the '084 Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the '084 Accused Products in an infringing manner.

## COUNT XII

## INDIRECT INFRINGEMENT OF THE '084 PATENT – CONTRIBUTORY INFRINGEMENT

128.     AnywhereCommerce restates and incorporates by reference the paragraphs above as if fully stated herein.

129.     Square has contributed to infringement and continues to contribute to infringement of one or more claims of the '084 Patent under 35 U.S.C. § 271(c), including at least Claim 5.  In addition to directly infringing the '084 Patent, Square has indirectly infringed the patent pursuant to 35 U.S.C. § 271(c) by supplying the Square EMV Chip Card Reader, as well as the Square Point of Sale application, both of which are used to directly infringe the claims.

130.     Upon information and belief, there is no substantial non-infringing use for the Square EMV Chip Card Reader or the Point of Sale application.  They are specifically designed to infringe the Asserted Patent claims, and Square intends for them to do so.

131.     Square has made, used, offered to sell, sold, and imported these devices with knowledge of the '084 Patent.

132.     Square further has made, used, offered to sell, sold, and imported these devices with knowledge that they have no substantial non-infringing use.

## COUNT XIII

## DIRECT INFRINGEMENT OF THE '637 PATENT

133.     AnywhereCommerce restates and incorporates by reference the paragraphs above as if fully stated herein.

134.     Square has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '637 Patent, in violation of 35 U.S.C. §271(a) by making, using, selling, and/or offering to sell within the United States, without authority, the Square EMV Chip Card Reader, together with the Square Point of Sale application and servers, which acts have been without the permission, consent, authorization or license from AnywhereCommerce.  Further, Square has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '637 Patent by importing into the United States, without authority, the Square EMV Chip Card Reader.

135.     The Square EMV Chip Card Reader, operating with the Square Point of Sale application and Square servers, meets every limitation of one or more claims of the '637 Patent and infringes the '637 Patent because it contains every element and/or practices every step of one or more claims of the patent including, without limitation, Claim 3, which claims "a method for reading a smart card having recorded information stored on an integrated circuit incorporated into the card, the method comprising the steps of:  providing a portable card reader device comprising a sensor for reading the recorded information stored on the integrated circuit, and an output jack adapted to be inserted into a jack associated with a mobile communication device; wherein said portable card reader device produces an encrypted analog signal indicative of the recorded information stored on said integrated circuit; said encrypted analog signal suitable for transmission to said jack of said mobile communication device; providing said encrypted analog signal indicative of the recorded information stored on the integrated circuit to said mobile communication device for further processing by circuitry contained in said mobile communication device;  and transmitting said signal to a transaction server for further processing." Ex. E at 12:25-44.

136.     Square and others at its direction have performed the claimed method by providing the Square EMV Chip Card Reader, together with the Square Point of Sale application and servers, for use in reading a smart card having recorded information stored on an integrated circuit incorporated into the card, such as a type of credit card or debit card generally known as a "chip" card.

137.     Square and others at its direction have provided the Square EMV Chip Card Reader, which is a portable card reader device for reading a smart card and includes both (1) a sensor for reading the recorded information stored on the integrated circuit, and (2) an output jack adapted to be inserted into a jack associated with a mobile communication device, such as a cell phone or tablet.

 

138.     The Square EMV Chip Card Reader produces an encrypted analog signal (indicative of the recorded information stored on said integrated circuit) that is suitable for transmission to the jack of the mobile communication device.   The operations and Square documents show that an encrypted analog signal is produced in a format that is suitable for transmission to a jack of a mobile communication device such as a cell phone or tablet, and is transmitted to the jack of the mobile communication device.   This is shown, for example, at least through the fact that the signal is received through the mobile communication device's analog jack, and Square documents advise that the analog signal is encrypted.   *See, e.g.*, https://squareup.com/help/us/en/article/3797-secure-data-encryption ("To protect Square account holders and their customers, all information entered by our customers has been encrypted and submitted to our servers securely" and "Square Point of Sale uses the Square Reader to encrypt all card-present transactions at the point of swipe, so information remains encrypted throughout transmission from the reader, to the application, to Square's data centers.   All communications are secure whether connected to the Internet via wireless or cellular data network (EDGE, 3G or 4G).").

139.     The EMV Chip Card Reader provides the encrypted analog signal to the mobile communication device for further processing by circuitry contained in the mobile communication device.   After the signal reaches the mobile communication device, upon information and belief, instructions and software from the Square Point of Sale app working on

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

1   the circuitry of the mobile communication device perform additional processing on the signal. *See,*
2   *e.g.*, Ex. L (explaining that the Square readers "only work[] with the Square [Point of Sale]
3   application and a compatible mobile device.").

4   140.     With the use of its Point of Sale app, Square then transmits the signal to a
5   transaction server for additional further processing.  This completes the infringement of Claim
6   3.

7   141.     On information and belief, Square practices other independent and dependent
8   claims of the '637 Patent in addition to Claim 3, and has encouraged others to do so.
9   AnywhereCommerce reserves the right to identify other infringing products and/or additional
10  claims of the '637 Patent according to the local patent rules of this district.

11  142.     Square's infringement has caused and continues to cause AnywhereCommerce
12  to suffer damages in an amount to be determined, and has caused and continues to cause
13  AnywhereCommerce irreparable harm for which AnywhereCommerce has no adequate remedy at
14  law. Both AnywhereCommerce and Square compete in the space for mobile point-of-sale products
15  and services, as described above.  Square's continued infringement of the Asserted Patents causes
16  harm to AnywhereCommerce in the form of price erosion, loss of goodwill, damage to reputation,
17  loss of business opportunities, inadequacy of money damage, and direct and indirect competition.
18  Monetary damages are insufficient to compensate AnywhereCommerce for these harms.
19  Accordingly, AnywhereCommerce is entitled to permanent injunctive relief.
20  AnywhereCommerce will continue to suffer irreparable harm unless and until the Court enjoins
21  Square from committing further infringing acts.

22  143.     Square's infringement of the '637 Patent has injured and continues to injure
23  AnywhereCommerce in an amount to be proven at trial, but not less than a reasonable royalty.
24  AnywhereCommerce is entitled to recover from Square damages, including lost profits, in an
25  amount to be determined that is adequate to compensate AnywhereCommerce for Defendant's
26  infringement.

27  144.     Upon information and belief, Square has infringed with full knowledge of the
28  Asserted Patents including the '637 Patent since at least shortly after its issuance in 2016 and

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

1   despite specific, written notice in January of 2019 from AnywhereCommerce to Square of all

2   Asserted Patents as well as specific notice of Square's infringement.  Despite its knowledge of

3   AnywhereCommerce's patents and specifically the Asserted Patents, Square has sold and

4   continued to sell the Accused Products, imported the Accused Products, and performed services

5   in complete and reckless disregard of AnywhereCommerce's patent rights.  As such, Square has

6   acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of

7   infringement of the '637 Patent, justifying an award to AnywhereCommerce of increased damages

8   under U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

### COUNT XIV

### INDIRECT INFRINGEMENT OF THE '637 PATENT – INDUCEMENT

11   145.    AnywhereCommerce restates and incorporates by reference the paragraphs

12   above as if fully stated herein.

13   146.    Square has induced and continues to induce infringement of one or more claims

14   of the '637 Patent under 35 U.S.C. § 271(b), including at least Claim 3.  In addition to directly

15   infringing the '637 Patent, Square has indirectly infringed the patent pursuant to 35 U.S.C. § 271(b)

16   by instructing, directing and/or requiring others, including customers, purchasers, and users, to use

17   its products to form an infringing apparatus and use the apparatus in a manner that infringes at

18   least Claim 1 of the '637 Patent either literally or under the doctrine of equivalents such as by

19   performing steps of the method claims where all of the steps of the method claims are performed

20   by either Square or its customers, purchasers, and users, or some combination thereof.  In that

21   regard, Square has known or been willfully blind to the fact that it was inducing others, including

22   customers, purchasers, and users, to infringe by practicing, either themselves or in conjunction

23   with Square, one or more apparatus claims of the '637 Patent.  Following Defendant's instructions,

24   customers, purchasers, and users have actually infringed by practicing, either themselves or in

25   conjunction with Defendant, one or more claims of the '637 Patent.

26   147.    Square has knowingly and actively aided and abetted the direct infringement of

27   the '637 Patent by instructing and encouraging its customers, purchasers, and users to use the '637

28   Accused Products.  Its instructions and encouragement have included, but are not limited to,

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

advising third parties to use the '637 Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '637 Patent, advertising and promoting the use of the '637 Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the '637 Accused Products in an infringing manner.

**COUNT XV**

**INDIRECT INFRINGEMENT OF THE '637 PATENT – CONTRIBUTORY INFRINGEMENT**

148.    AnywhereCommerce restates and incorporates by reference the paragraphs above as if fully stated herein.

149.    Square has contributed to infringement and continues to contribute to infringement of one or more claims of the '637 Patent under 35 U.S.C. § 271(c), including at least Claim 3.  In addition to directly infringing the '637 Patent, Square has indirectly infringed the patent pursuant to 35 U.S.C. § 271(c) by supplying the Square EMV Chip Card Reader, as well as the Square Point of Sale application, both of which are used to directly infringe the claims.

150.    Upon information and belief, there is no substantial non-infringing use for the Square EMV Chip Card Reader or the Point of Sale application.  They are specifically designed to infringe the Asserted Patent claims, and Square intends for them to do so.

151.    Square has made, used, offered to sell, sold, and imported these devices with knowledge of the '637 Patent.

152.    Square further has made, used, offered to sell, sold, and imported these devices with knowledge that they have no substantial non-infringing use.

**COUNT XVI**

**DIRECT INFRINGEMENT OF THE '239 PATENT**

153.    AnywhereCommerce restates and incorporates by reference the paragraphs above as if fully stated herein.

154.    Square has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '239 Patent, in violation of 35 U.S.C. §271(a) by making, using, selling, and/or offering to sell within the United States, without authority, the

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

Square EMV Chip Card Reader and Square Contactless and Chip Reader, together with the Square Point of Sale application and servers, which acts have been without the permission, consent, authorization or license from AnywhereCommerce. Further, Square has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '239 Patent by importing into the United States, without authority, the Square EMV Chip Card Reader and Square Contactless and Chip Reader.

155.    Each of the Square EMV Chip Card Reader and Square Contactless and Chip Reader meets every limitation of one or more claims of the '239 Patent and infringes the '239 Patent because each contains every element and/or practices every step of one or more claims of the patent including, without limitation, Claim 1, which claims a "portable smart card reader device for reading a smart card having recorded information stored on an integrated circuit incorporated into the card, the device comprising: a sensor for reading said recorded information stored on said integrated circuit incorporated into said card; a controller coupled to said sensor for converting the recorded information stored on said integrated circuit into an encrypted signal indicative of the recorded information, and a communication link for coupling said portable smart card reader device to a mobile communication device for the transmission of said encrypted signal indicative of the recorded information therebetween; wherein when said sensor reads the recorded information stored on said integrated circuit, said controller converts the recorded information read by said sensor into said encrypted signal and transmits said encrypted signal via said communication link to said mobile communication device; and said mobile communication device transmits the encrypted signal indicative of the recorded information to a remote transaction server for processing a commercial transaction. Ex. F at 12:6-29.

156.    The Square EMV Chip Card Reader contains the elements of this Claim 1 of the '239 Patent. As explained above, it is specifically designed as a portable smart card reader device for reading a smart card. It incorporates the sensor for reading the information stored on the card's embedded integrated circuit, which is the card's "chip."

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

157.     The Square EMV Chip Card Reader also includes a controller coupled to the sensor for converting the recorded information stored on the card's chip into an encrypted signal indicative of the recorded information.  The sensor coupled to the controller is shown below.

158.     Square documents are clear that the signal is encrypted immediately upon being read.  *See, e.g.*, https://squareup.com/help/us/en/article/3797-secure-data-encryption ("To protect Square account holders and their customers, all information entered by our customers has been encrypted and submitted to our servers securely" and "Square Point of Sale uses the Square Reader to encrypt all card-present transactions at the point of swipe, so information remains encrypted throughout transmission from the reader, to the application, to Square's data centers.").  In operation, the controller "converts the recorded information read by said sensor into said encrypted signal and transmits said encrypted signal via said communication link to said mobile communication device." Ex. F at 12:20-25.

159.     As discussed above, the output jack on the Square EMV Chip Card Reader is designed to be inserted into the jack of the mobile communication device to form a communication link between the two devices for the transmission of the encrypted signal between them.  Thus, the sensor reads the recorded information from the card's integrated circuit ("chip"), and the controller converts the recorded information into an encrypted signal and sends the encrypted signal, via the communication link of the hands-free jack, to the mobile communication device.



160.     Operating on instructions from the Square Point of Sale app which must be used for the transaction, the mobile communication device then transmits the encrypted signal (indicative of the recorded information) to a remote transaction server for processing a commercial transaction.  *See, e.g.*, https://squareup.com/help/us/en/article/3797-secure-data-encryption ("To

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

1    protect Square account holders and their customers, all information entered by our customers has

2    been encrypted and submitted to our servers securely" and "Square Point of Sale uses the Square

3    Reader to encrypt all card-present transactions at the point of swipe, so information remains

4    encrypted throughout transmission from the reader, to the application, to Square's data centers.").

5       161.    Square's Contactless and Chip Reader – a wireless Bluetooth device – also meets

6    all of the elements of this Claim 1 of the '239 Patent, but with a different design.

7       162.    Like the EMV Chip Card Reader, the Square Contactless and Chip Reader is

8    designed as a reader for a smart card with an embedded integrated circuit chip.    *See*

 

17   https://squareup.com/us/en/hardware/contactless-chip-reader ("Square Reader lets you accept chip

18   cards …").



25   The contactless reader connects wirelessly to a mobile communication device such as a cell phone

26   or tablet, reads the information embedded on the chip, converts and encrypts the information into

27   an encrypted signal that reflects that information, and transmits the information to the mobile

28   communication device.    *See, e.g.*,    https://squareup.com/us/en/hardware/contactless-chip-reader

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

1   ("Connect the reader wirelessly to your Apple or Android device via Bluetooth LE (no need for a

2   headset jack). Fire up a Square point-of-sale app and you're ready to take payments anywhere.").

3   The communication device then transmits the encrypted signal via software from the Square Point

4   of Sale app to Square's transaction servers, which are located at remote, secured facilities.

5        163.       As to its specific design, a photo of the Contactless and Chip Reader's internal

6   layout is shown below:



14   As shown in the photo, the device includes a sensor for reading information that is recorded on the

15   card's integrated circuit chip.

16        164.       Coupled to the sensor on the printed circuit board is a controller for converting

17   the recorded information stored on the integrated circuit into an encrypted signal (indicative of the

18   recorded information). *See, e.g.*, https://squareup.com/help/us/en/article/3797-secure-data-

19   encryption ("Secure Data Encryption") ("Square Point of Sale uses the Square Reader to encrypt

20   all card-present transactions at the point of swipe, so information remains encrypted throughout

21   transmission from the reader, to the application, to Square's data centers. All communications are

22   secure whether connected to the Internet via wireless or cellular data network (EDGE, 3G or 4G).")

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

165.    The Contactless and Chip Reader also includes a communication IC for Bluetooth Connection, which is shown in the following photo:



166.    The communication IC provides a communication link to the communication device for the transmission of the encrypted signal using with Bluetooth technology.  *See* https://squareup.com/us/en/hardware/contactless-chip-reader ("Connect the reader wirelessly to your Apple or Android device via Bluetooth LE (no need for a headset jack).  Fire up a Square point-of-sale app and you're ready to take payments anywhere.").

167.    With this structure, the sensor reads the recorded information stored on the integrated circuit, the controller converts the recorded information read by the sensor into an encrypted signal and transmits the encrypted signal to the mobile communication device using the communication link.  Under instruction from the Square Point of Sale application, the mobile communication device then transmits the encrypted signal (indicative of the recorded information) to a remote transaction server using the Point of Sale app for processing a commercial transaction.  *See, e.g.*, https://squareup.com/help/us/en/article/3797-secure-data-encryption ("To protect Square account holders and their customers, all information entered by our customers has been encrypted and submitted to our servers securely" and "Square Point of Sale uses the Square Reader to encrypt all card-present transactions at the point of swipe, so information remains encrypted throughout transmission from the reader, to the application, to Square's data centers.").

168.    On information and belief, Square has practiced other independent and dependent claims of the '239 Patent in addition to Claim 1, and encouraged others to do so.

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

AnywhereCommerce reserves the right to identify other infringing products and/or additional claims of the '239 Patent according to the local patent rules of this district.

169.     Square's infringement has caused and continues to cause AnywhereCommerce to suffer damages in an amount to be determined, and has caused and continues to cause AnywhereCommerce irreparable harm for which AnywhereCommerce has no adequate remedy at law.  Both AnywhereCommerce and Square compete in the space for mobile point-of-sale products and services, as described above.  Square's continued infringement of the Asserted Patents causes harm to AnywhereCommerce in the form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities, inadequacy of money damage, and direct and indirect competition.  Monetary damages are insufficient to compensate AnywhereCommerce for these harms.  Accordingly, AnywhereCommerce is entitled to permanent injunctive relief.  AnywhereCommerce will continue to suffer irreparable harm unless and until the Court enjoins Square from committing further infringing acts.

170.     Square's infringement of the '239 Patent has injured and continues to injure AnywhereCommerce in an amount to be proven at trial, but not less than a reasonable royalty.  AnywhereCommerce is entitled to recover from Square damages, including lost profits, in an amount to be determined that is adequate to compensate AnywhereCommerce for Defendant's infringement.

171.     Upon information and belief, Square has infringed with full knowledge of the Asserted Patents including the '239 Patent since shortly after it issued in 2016 and despite specific, written notice in January of 2019 from AnywhereCommerce to Square of all Asserted Patents as well as specific notice of Square's infringement.  Despite its knowledge of AnywhereCommerce's patents and specifically the Asserted Patents, Square has sold and continued to sell the Accused Products, imported the Accused Products, and performed services in complete and reckless disregard of AnywhereCommerce's patent rights.  As such, Square has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '239 Patent, justifying an award to AnywhereCommerce of increased damages under U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

1

**COUNT XVII**

2

**INDIRECT INFRINGEMENT OF THE '239 PATENT – INDUCEMENT**

3      172.     AnywhereCommerce restates and incorporates by reference the paragraphs

4 above as if fully stated herein.

5      173.     Square has induced and continues to induce infringement of one or more claims

6 of the '239 Patent under 35 U.S.C. § 271(b), including at least Claim 1.  In addition to directly

7 infringing the '239 Patent, Square indirectly infringes the patent pursuant to 35 U.S.C. § 271(b)

8 by instructing, directing and/or requiring others, including customers, purchasers, and users, to use

9 its products to form an infringing apparatus and use the apparatus in a manner that infringes the

10 '239 Patent.  In that regard, Square has known or been willfully blind to the fact that it was inducing

11 others, including customers, purchasers, and users, to infringe by practicing, either themselves or

12 in conjunction with Square, one or more apparatus claims of the '239 Patent.  Following

13 Defendant's instructions, customers, purchasers, and users have actually infringed by practicing,

14 either themselves or in conjunction with Defendant, one or more claims of the '239 Patent.

15      174.     Square has knowingly and actively aided and abetted the direct infringement of

16 the '239 Patent by instructing and encouraging its customers, purchasers, and users to use the '239

17 Accused Products.  Its instructions and encouragement have included, but are not limited to,

18 advising third parties to use the '239 Accused Products in an infringing manner, providing a

19 mechanism through which third parties may infringe the '239 Patent, advertising and promoting

20 the use of the '239 Accused Products in an infringing manner, and distributing guidelines and

21 instructions to third parties on how to use the '239 Accused Products in an infringing manner.

22

**COUNT XVIII**

23

**INDIRECT INFRINGEMENT OF THE '239 PATENT – CONTRIBUTORY**

24

**INFRINGEMENT**

25      175.     AnywhereCommerce restates and incorporates by reference the paragraphs

26 above as if fully stated herein.

27      176.     Square has contributed to infringement and continues to contribute to

28 infringement of one or more claims of the '239 Patent under 35 U.S.C. § 271(c), including at least

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

Claim 1.  In addition to directly infringing the '239 Patent, Square has indirectly infringed the patent pursuant to 35 U.S.C. § 271(c) by supplying the Square EMV Chip Card Reader, Square Contactless and Chip Reader, and Square Point of Sale application, all of which are used to directly infringe the claims.

177.     Upon information and belief, there is no substantial non-infringing use for the Square EMV Chip Card Reader, Square Contactless and Chip Reader, or the Point of Sale application.  They are specifically designed to infringe the Asserted Patent claims, and Square intends for them to do so.

178.     Square has made, used, offered to sell, sold, and imported these devices with knowledge of the '239 Patent.

179.     Square further has made, used, offered to sell, sold, and imported these devices with knowledge that they have no substantial non-infringing use.

## COUNT XIX

## DIRECT INFRINGEMENT OF THE '351 PATENT

180.     AnywhereCommerce restates and incorporates by reference the paragraphs above as if fully stated herein.

181.     Square has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '351 Patent, in violation of 35 U.S.C. §271(a) by making, using, selling, and/or offering to sell within the United States, without authority, the Square EMV Chip Card Reader and Square Contactless and Chip Reader, together with the Square Point of Sale application and servers, which acts have been without the permission, consent, authorization or license from AnywhereCommerce.  Further, Square has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '351 Patent by importing into the United States, without authority, the Square EMV Chip Card Reader and Square Contactless and Chip Reader.

182.     Each of the Square EMV Chip Card Reader and Square Contactless and Chip Reader meets every limitation of one or more claims of the '351 Patent and infringes the '351

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

1    Patent because each contains every element and/or practices every step of one or more claims of

2    the patent including, without limitation, Claim 1.

3        183.    Claim 1 of the '351 Patent claims "[a] portable reader apparatus for reading a

4    payment device having information stored on an integrated circuit incorporated into said payment

5    device; the apparatus comprising:  a sensor for reading information stored on said integrated circuit

6    incorporated into said payment device; a controller coupled to the sensor for converting said

7    information to a format suitable for transmission to a mobile communication device; and a

8    communication link for coupling the portable reader apparatus to said mobile communication

9    device for the transmission of said information there between; wherein the sensor reads said

10   information, the controller converts said information into a format suitable for transmission to said

11   mobile communication device and transmits said information via the communication link to said

12   mobile communication device, and said communication device transmits said information to a

13   remote transaction server for processing a commercial transaction." Ex. G at 12:7-26.  As with

14   Claim 1 of the '239 Patent, both the Square EMV Chip Card Reader and the Square Contactless

15   and Chip Reader meet the limitations of Claim 1 of the '351 Patent.

16       184.    The Square EMV Chip Card Reader contains every element of this Claim 1 of

17   the '351 Patent.  As explained above, it is specifically designed as a portable reader apparatus for

18   reading a payment device such as a credit card or debit card with information stored on an

19   integrated circuit chip embedded into the card.  It incorporates the sensor for reading the

20   information stored on the chip, and a controller coupled to the sensor for converting the

21   information to a format appropriate for transmission to a mobile communication device.

22       185.    The output jack on the EMV Chip Card Reader, which is designed to be inserted

23   into the jack of the mobile communication device, creates a communication link for coupling the

24   two devices together for the transmission of the information between them. *See*

25   https://squareup.com/shop/hardware/us/en/products/chi-credit-card-reader  ("Square chip card

26   reader plugs into the headphone jack of your smartphone or tablet.").

27       186.    The sensor reads the information from the chip on the card, the controller

28   converts the information into the proper format for transmission to the mobile communication

- 51 -

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

1  device and transmits the information to the mobile communication device via the communication

2  link, and the mobile communication device transmits the information to a remote transaction server

3  for processing of the commercial transaction.

4      187.    Square's Contactless and Chip Reader also meets all of the elements of Claim 1

5  of the '351 Patent.  The Square Contactless and Chip Reader is a portable reader apparatus for

6  reading a payment device such as a credit card or debit card with information stored on an

7  integrated        circuit        chip        embedded        on        the        card.        *See*

8  https://squareup.com/us/en/hardware/contactless-chip-reader ("Square Reader lets you accept chip

9  cards, Apple Pay, and Google Pay anywhere.  Connect wirelessly, accept payments quickly, and

10  get your funds fast.").

11      188.    It incorporates a sensor for reading the information

12  stored on the chip, and a controller coupled to the sensor for converting

13  that information to a format appropriate for transmission to a mobile

14  communication device such as a cell phone or tablet.



15      189.    The contactless reader is coupled to a mobile communication device (such as a

16  cell phone or tablet) through a wireless Bluetooth connection for transmission of information

17  between the two devices.  The reader includes a communication IC to form and control this link.

18      190.    The sensor reads the information embedded on the card's chip, and the controller

19  converts the information into the proper format for transmission to the mobile communication

20  device and transmits the information through the wireless link to the communication device.  The

21  mobile communication device transmits the information to Square's transaction servers for

22  processing of the commercial transaction.  This meets the limitations of the claim.

23      191.    On information and belief, Square has practiced other independent and

24  dependent claims of the '351 Patent in addition to Claim 1, and encouraged others to do so.

25  AnywhereCommerce reserves the right to identify other infringing products and/or additional

26  claims of the '351 Patent according to the local patent rules of this district.

27      192.    Square's infringement has caused and continues to cause AnywhereCommerce

28  to suffer damages in an amount to be determined, and has caused and continues to cause

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

1  AnywhereCommerce irreparable harm for which AnywhereCommerce has no adequate remedy at
2  law. Both AnywhereCommerce and Square compete in the space for mobile point-of-sale products
3  and services, as described above. Square's continued infringement of the Asserted Patents causes
4  harm to AnywhereCommerce in the form of price erosion, loss of goodwill, damage to reputation,
5  loss of business opportunities, inadequacy of money damage, and direct and indirect competition.
6  Monetary damages are insufficient to compensate AnywhereCommerce for these harms.
7  Accordingly, AnywhereCommerce is entitled to permanent injunctive relief.
8  AnywhereCommerce will continue to suffer irreparable harm unless and until the Court enjoins
9  Square from committing further infringing acts.

10  193.    Square's infringement of the '351 Patent has injured and continues to injure
11  AnywhereCommerce in an amount to be proven at trial, but not less than a reasonable royalty.
12  AnywhereCommerce is entitled to recover from Square damages, including lost profits, in an
13  amount to be determined that is adequate to compensate AnywhereCommerce for Defendant's
14  infringement.

15  194.    Upon information and belief Square has infringed with full knowledge of the
16  Asserted Patents including the '351 Patent since at least shortly after its issuance in 2017 and
17  despite specific, written notice in January of 2019 from AnywhereCommerce to Square of all
18  Asserted Patents as well as specific notice of Square's infringement. Despite its knowledge of
19  AnywhereCommerce's patents and specifically the Asserted Patents, Square has sold and
20  continued to sell the Accused Products, imported the Accused Products, and performed services
21  in complete and reckless disregard of AnywhereCommerce's patent rights. As such, Square has
22  acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of
23  infringement of the '351 Patent, justifying an award to AnywhereCommerce of increased damages
24  under U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

25  ## COUNT XX

26  ## INDIRECT INFRINGEMENT OF THE '351 PATENT – INDUCEMENT

27  195.    AnywhereCommerce restates and incorporates by reference the paragraphs
28  above as if fully stated herein.

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

196.     Square has induced and continues to induce infringement of one or more claims of the '351 Patent under 35 U.S.C. § 271(b), including at least Claim 1.  In addition to directly infringing the '351 Patent, Square has indirectly infringed the patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including customers, purchasers, and users, to use its products to form an infringing apparatus and use the apparatus in a manner that infringes the '351 Patent.  In that regard, Square has known or been willfully blind to the fact that it was inducing others, including customers, purchasers, and users, to infringe by practicing, either themselves or in conjunction with Square, one or more apparatus claims of the '351 Patent.   Following Defendant's instructions, customers, purchasers, and users have actually infringed by practicing, either themselves or in conjunction with Defendant, one or more claims of the '351 Patent.

197.     Square has knowingly and actively aided and abetted the direct infringement of the '351 Patent by instructing and encouraging its customers, purchasers, and users to use the '351 Accused Products.   Its instructions and encouragement have included, but are not limited to, advising third parties to use the '351 Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '351 Patent, advertising and promoting the use of the '351 Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the '351 Accused Products in an infringing manner.

## COUNT XXI

## INDIRECT INFRINGEMENT OF THE '351 PATENT – CONTRIBUTORY INFRINGEMENT

198.     AnywhereCommerce restates and incorporates by reference the paragraphs above as if fully stated herein.

199.     Square has contributed to infringement and continues to contribute to infringement of one or more claims of the '351 Patent under 35 U.S.C. § 271(c), including at least Claim 1.  In addition to directly infringing the '351 Patent, Square has indirectly infringed the patent pursuant to 35 U.S.C. § 271(c) by supplying the Square EMV Chip Card Reader, Square Contactless and Chip Reader, and Square Point of Sale application, all of which are used to directly infringe the claims.

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

200.     Upon information and belief, there is no substantial non-infringing use for the Square EMV Chip Card Reader, Square Contactless and Chip Reader, or the Point of Sale application.  They are specifically designed to infringe the Asserted Patent claims, and Square intends for them to do so.

201.     Square has made, used, offered to sell, sold, and imported these devices with knowledge of the '351 Patent.

202.     Square further has made, used, offered to sell, sold, and imported these devices with knowledge that they have no substantial non-infringing use.

## COUNT XXII

## DIRECT INFRINGEMENT OF THE '107 PATENT

203.     AnywhereCommerce restates and incorporates by reference the paragraphs above as if fully stated herein.

204.     Square has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '107 Patent, in violation of 35 U.S.C. §271(a) by making, using, selling, and/or offering to sell within the United States, without authority, the Square Magstripe Reader, the Square EMV Chip Card Reader, together with the Square Point of Sale application and servers, and the Square Contactless and Chip Card Reader, which acts have been without the permission, consent, authorization or license from AnywhereCommerce.  Further, Square has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '107 Patent by importing into the United States, without authority, the Square Magstripe Reader, the Square EMV Chip Card Reader, and the Square Contactless and Chip Card Reader.

205.     Each of the Square Magstripe Reader, Square EMV Chip Card Reader, and Square Contactless and Chip Reader meets every limitation of one or more claims of the '107 Patent and infringes the '107 Patent because each contains every element and/or practices every step of one or more claims of the patent including, without limitation, Claim 1.

206.     Claim 1 of the '107 Patent is directed to "an apparatus for effecting commercial transactions between an input device and a remote transaction server using a communication

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

device, said apparatus comprising:  an input device for capturing recorded information from a transaction card; a sensor incorporated into said input device for reading said recorded information stored on said transaction card, said sensor including circuitry for reading an analog signal; a controller coupled to said sensor for converting the recorded information stored on said transaction card into a format suitable for transmission to a communication device; and a communication link for coupling said controller to a communication device for the transmission of said recorded information therebetween; wherein the said sensor reads the recorded information stored on said transaction card, said controller converts said recorded information read by said sensor into a format suitable for transmission to said communication device and transmits said recorded information via the communication link to said communication device, and said communication device transmits said recorded information to a remote transaction server for processing a commercial transaction." Ex. H at 12:10-34.

207.    The Square Magstripe Readers (with an output jack and/or Lightning Connector), Square EMV Chip and Card Reader, and the Square Contactless and Chip Reader each have all of the elements of this claim.  Each is designed to work with a communication device such as a cell phone or tablet to effect a commercial transaction between the reader and a remote transaction server.  With each, there is an input device for capturing recorded information from a transaction card (such as a credit card or debit card) and a sensor incorporated into the input device for reading the recorded information stored on the card.

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

208.    The sensor in each Square reader includes circuitry for reading an analog signal and a controller coupled to the sensor for converting the recorded information stored on the card into a proper format for transmission to a communication device.

  

209.    Moreover, each device provides a communication link – whether through a hands-free jack, an Apple Lightning Connector, or a wireless/Bluetooth connection – for coupling the controller to the communication device for the transmission of the recorded information between the two.

210.    The sensor in each reader reads the recorded information from the transaction card, the controller converts it into a format for transmission to the communication device and transmits the information via the communication link to the communication device.  The communication device transmits the recorded information to a remote transaction server for processing a commercial transaction.

211.    On information and belief, Square has practiced other independent and dependent claims of the '107 Patent in addition to Claim 1, and encouraged others to do so. AnywhereCommerce reserves the right to identify other infringing products and/or additional claims of the '107 Patent according to the local patent rules of this district.

212.    Square's infringement has caused and continues to cause AnywhereCommerce to suffer damages in an amount to be determined, and has caused and continues to cause AnywhereCommerce irreparable harm for which AnywhereCommerce has no adequate remedy at law.  Both AnywhereCommerce and Square compete in the space for mobile point-of-sale products

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

and services, as described above. Square's continued infringement of the Asserted Patents causes harm to AnywhereCommerce in the form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities, inadequacy of money damage, and direct and indirect competition. Monetary damages are insufficient to compensate AnywhereCommerce for these harms. Accordingly, AnywhereCommerce is entitled to permanent injunctive relief. AnywhereCommerce will continue to suffer irreparable harm unless and until the Court enjoins Square from committing further infringing acts.

213.     Square's infringement of the '107 Patent has injured and continues to injure AnywhereCommerce in an amount to be proven at trial, but not less than a reasonable royalty. AnywhereCommerce is entitled to recover from Square damages, including lost profits, in an amount to be determined that is adequate to compensate AnywhereCommerce for Defendant's infringement.

214.     Upon information and belief, Square has infringed with full knowledge of the Asserted Patents including the '107 Patent since at least shortly after its issuance in 2017 and despite specific, written notice in January of 2019 from AnywhereCommerce to Square of all Asserted Patents as well as specific notice of Square's infringement. Despite its knowledge of AnywhereCommerce's patents and specifically the Asserted Patents, Square has sold and continued to sell the Accused Products, imported the Accused Products, and performed services in complete and reckless disregard of AnywhereCommerce's patent rights. As such, Square has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '107 Patent, justifying an award to AnywhereCommerce of increased damages under U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT XXIII

## INDIRECT INFRINGEMENT OF THE '107 PATENT – INDUCEMENT

215.     AnywhereCommerce restates and incorporates by reference the paragraphs above as if fully stated herein.

216.     Square has induced and continues to induce infringement of one or more claims of the '107 Patent under 35 U.S.C. § 271(b), including at least Claim 1. In addition to directly

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

infringing the '107 Patent, Square has indirectly infringed the patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including customers, purchasers, and users, to use its products to form an infringing apparatus and use the apparatus in a manner that infringes the '107 Patent.  In that regard, Square has known or been willfully blind to the fact that it was inducing others, including customers, purchasers, and users, to infringe by practicing, either themselves or in conjunction with Square, one or more apparatus claims of the '107 Patent.  Following Defendant's instructions, customers, purchasers, and users have actually infringed by practicing, either themselves or in conjunction with Defendant, one or more claims of the '107 Patent.

217.     Square has knowingly and actively aided and abetted the direct infringement of the '107 Patent by instructing and encouraging its customers, purchasers, and users to use the '107 Accused Products.  Its instructions and encouragement have included, but are not limited to, advising third parties to use the '107 Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '107 Patent, advertising and promoting the use of the '107 Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the '107 Accused Products in an infringing manner.

## COUNT XXIV

## INDIRECT INFRINGEMENT OF THE '107 PATENT – CONTRIBUTORY INFRINGEMENT

218.     AnywhereCommerce restates and incorporates by reference the paragraphs above as if fully stated herein.

219.     Square has contributed to infringement and continues to contribute to infringement of one or more claims of the '107 Patent under 35 U.S.C. § 271(c), including at least Claim 1.  In addition to directly infringing the '107 Patent, Square has indirectly infringed the patent pursuant to 35 U.S.C. § 271(c) by supplying the Square Magstripe Reader, Square EMV Chip Card Reader, Square Contactless and Chip Reader, and Square Point of Sale application, all of which are used to directly infringe the claims.

220.     Upon information and belief, there is no substantial non-infringing use for the Square Magstripe Reader, Square EMV Chip Card Reader, Square Contactless and Chip Reader,

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

or the Point of Sale application.  They are specifically designed to infringe the Asserted Patent claims, and Square intends for them to do so.

221.     Square has made, used, offered to sell, sold, and imported these devices with knowledge of the '107 Patent.

222.     Square further has made, used, offered to sell, sold, and imported these devices with knowledge that they have no substantial non-infringing use.

## PRAYER FOR RELIEF

**WHEREFORE,** AnywhereCommerce, Inc. respectfully requests that this Court enter judgment in its favor against Square as follows:

A.     To enter judgment that Square has directly infringed one or more claims of each of the Asserted Patents, has induced infringement of the Asserted Patents, and has contributed to the infringement of the Asserted Patents.

B.     To enter orders permanently enjoining Square and its officers, agents, directors, servants, employees, attorneys, representatives, parents, subsidiaries, affiliates, joint venturers, and all of those in active concert, privity or participation with them and their successors and assigns, from infringing the Asserted Patents, and/or inducing or contributing to infringement, and for all further and proper injunctive relief pursuant to 35 U.S.C. § 283.

C.     To award AnywhereCommerce its damages in an amount adequate to compensate AnywhereCommerce for Defendant's direct and indirect infringement of the Asserted Patents, together with costs and pre-judgment and post-judgment interest.

D.     To award an accounting of all Defendant's infringing sales and revenues through final judgment.

E.     To enter judgment that Square's infringement has been willful, wanton, and deliberate and that the damages against it be increased up to treble on this basis or for any other basis in accordance with the law.

F.     To declare this case to be "exceptional" under 35 U.S.C. § 285 and to award AnywhereCommerce its attorneys' fees, expenses, and costs incurred in this action; and

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

G.      To award AnywhereCommerce such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, AnywhereCommerce requests a trial by jury of any and all issues on which a trial by jury is available.

Dated: July 26, 2019                    Respectfully Submitted,

                                        JOSEPH SAVERI LAW FIRM, INC.

                                        By:      */s/ Joseph R. Saveri*
                                                 Joseph R. Saveri

                                        Joseph R. Saveri (State Bar No. 130064)
                                        Steven N. Williams (State Bar No. 175489)
                                        Jiamin Chen (*pro hac vice* to be submitted)
                                        JOSEPH SAVERI LAW FIRM, INC.
                                        601 California Street, Suite 1000
                                        San Francisco, California 94108
                                        Telephone: (415) 500-6800
                                        Facsimile: (415) 395-9940
                                        jsaveri@saverilawfirm.com
                                        swilliams@saverilawfirm.com
                                        jchen@saverilawfirm.com

                                        Niall A. MacLeod (*pro hac vice* to be submitted)
                                        Diane L. Peterson (*pro hac vice* to be submitted)
                                        Aaron A. Myers (*pro hac vice* to be submitted)
                                        KUTAK ROCK LLP
                                        60 S. Sixth Street
                                        Suite 3400
                                        Minneapolis, MN 55402
                                        Telephone:   (612) 334-5000
                                        Facsimile:   (612) 334-5050
                                        Niall.macleod@kutakrock.com
                                        Diane.peterson@kutakrock.com
                                        Aaron.myers@kutakrock.com

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Oliver D. Griffin (*pro hac vice* to be submitted)
Melissa A. Bozeman (*pro hac vice* to be submitted)
KUTAK ROCK LLP
1760 Market Street
Suite 1100
Philadelphia, PA 19103-4104
Telephone:    (215) 299-4384
Facsimile:    (215) 981-0719
Oliver.griffin@kutakrock.com
Melissa.bozeman@kutakrock.com

*Attorneys for Plaintiff AnywhereCommerce, Inc.*

COMPLAINT FOR PATENT INFRINGEMENT
JURY TRIAL DEMANDED